*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DEJUAN THOMPSON,

Defendant-Appellant.

UNPUBLISHED
October 07, 2025
9:55 AM

No. 361842
Saginaw Circuit Court
LC No. 19-046551-FC

Before: K. F. KELLY, P.J., and MARIANI and ACKERMAN, JJ.

MARIANI, J. (*concurring in part, dissenting in part*).

I agree with the majority's resolution of defendant's speedy-trial claim. I also agree with the majority that the trial court improperly admitted part of defendant's interrogation, and that all statements that defendant made from the 7:14 mark forward in the interrogation video should have been suppressed. I respectfully dissent, however, from the majority's conclusion that the prosecution has shown that this preserved, constitutional error was harmless beyond a reasonable doubt. Accordingly, I would reverse defendant's convictions and remand for further proceedings.[1]

As the majority duly recognizes, because the erroneous use of involuntary statements at trial violates a defendant's constitutional right to due process, a defendant's conviction may only stand if the prosecution can prove that the error was harmless beyond a reasonable doubt. *People v Stewart*, 512 Mich 472, 501; 999 NW2d 717 (2023). This is a highly demanding standard of proof—rightly so, given the sort of error it attends—and it is the prosecution's burden to meet it. Here, the prosecution, in my view, has fallen well short of carrying this burden; indeed, it has not even attempted to address harmlessness in so many words. Read charitably, an argument to that effect can potentially be gleaned from the prosecution's position that defendant did not proffer any confession between the 7:14 and 17:50 marks of the interrogation, and instead simply reiterated admissions he had already made. I do not, however, see merit in line of this argument and any suggestion of harmlessness it might imply.

---

[1] In light of that relief, I would not reach defendant's jail-credit claim.

To start, defendant's statements during the erroneously admitted portion of the interrogation were highly incriminating and prejudicial. Shortly after the detective issued his first threat to arrest Ms. Butterfield, defendant clearly and directly confessed to his participation in the robbery.[2] Correspondingly, and unsurprisingly, the prosecution emphasized this confession during defendant's trial. And while defendant also made some incriminating remarks earlier in the interrogation, they fell well short, in clarity and impact, of this ensuing (and involuntary) confession. When the interrogation began, defendant denied involvement with the robbery. The detective then told defendant that his sister was in jail as a conspirator, but that the detective could help with the prosecutor if defendant cooperated. Defendant asked the detective if they would let his sister go if he cooperated, and claimed his sister did not have anything to do with the robbery. In response, the detective asked defendant if he directed his sister to scope out the house, and defendant responded that he "forced her to." The detective then continued to press for information regarding defendant's and others' involvement, which defendant declined to offer while saying that he would "reach out to" the detective. Contrary to the prosecution's suggestion, defendant did not confess to robbing the house during this exchange; that only came after the threat to arrest Ms. Butterfield. And while defendant's statement that he forced his sister to scope out the house was certainly probative of his guilt, it was also couched in his readily apparent concern for his sister and desire to exculpate her. In short, while the properly admitted portion of the interrogation was incriminating, it was a far cry from the clear and direct confession that defendant subsequently (and involuntarily) proffered; in both content and prejudicial effect, the latter was by no means simply cumulative or redundant of the former, as the prosecution maintains. Accordingly, the prosecution, in my view, has failed to show that the error in admitting defendant's statements after the 7:14 mark of the interrogation was harmless beyond a reasonable doubt simply by dint of the properly admitted potion of the interrogation.

Furthermore, while the prosecution makes no argument to this effect, my review of the record as a whole likewise does not indicate that this error was harmless beyond a reasonable doubt. No physical evidence was obtained or used at trial to connect defendant to the robbery. Law enforcement recovered neither the gun nor the ski mask that were allegedly used in the robbery, nor did they recover the allegedly stolen items. And there was no DNA or other forensic evidence found at the scene of the crime. Accordingly, the prosecution's case relied on witness testimony: namely, descriptions by law enforcement officers of the surveillance, apprehension, and interrogation of defendant; and eyewitness testimony from victims of the robbery.[3]

As to the officer testimony, it provided (beyond the interrogation evidence already discussed) little to connect defendant to the commission of the robbery. The testifying officers instead focused on how defendant was detained. To the extent this testimony was provided to suggest defendant's guilt (for failing to stop for the arresting officers), defendant offered alternate explanations for his conduct. Additionally, as discussed in the properly admitted portion of the

---

[2] He did not go so far as to admit having a firearm, and would not identify the others involved.

[3] As for the defense's proofs, defendant testified on his own behalf, denying that he participated in the robbery and stating that he had lied when he said otherwise during the interrogation.

interrogation, defendant was absconding from parole at the time—another plausible reason for his failure to stop.

As to the eyewitnesses to the robbery, the homeowner was unable to identify or recall what any of the three robbers looked like. She was only able to describe the events. The second witness, the sister of the homeowner, was the only person to identify defendant. She acknowledged that the perpetrator was wearing a ski mask, but claimed that she had identified defendant by his eyes and body shape. She admitted, however, that she did not know what color defendant's eyes were, and that she had only seen defendant two to three times before. The witness also provided significantly different estimates of defendant's height and weight at various points, as well as a litany of other inconsistent statements over the course of the case, which were all brought out at trial. The witness admitted that she had testified differently at the preliminary examination about how much time passed after the robbery before she called 911 (claiming then that it was 15-20 minutes but admitting at trial that it was approximately 3 hours). The witness also testified at trial that she had sold marijuana to defendant's sister on prior occasions, but she did not tell this to the officers investigating the robbery and, in her testimony at the preliminary examination, she denied selling marijuana. Similarly, the witness testified at the preliminary examination that defendant's sister did not smoke or buy marijuana on the day of the robbery, but at trial she testified that defendant's sister both bought and smoked marijuana that day. And the witness denied at the preliminary examination that marijuana was taken from the house during the robbery, but at trial she testified that it was. Thus, although there was a witness that provided identification testimony, the witness and her identification were both problematic.

In sum, the properly admitted evidence of defendant's guilt essentially comprised some incriminating remarks during his interrogation, an identification from an unreliable witness, and whatever might be inferred from his failure to stop for the arresting officers. While this evidence may certainly have been probative of defendant's guilt, it is not—particularly when held up against defendant's highly incriminating but improperly admitted confession—"sufficient for [me] to conclude *beyond a reasonable doubt* that a rational jury would have found defendant guilty absent the error in admitting his involuntary statement." *Stewart*, 512 Mich at 501. I would therefore conclude that the prosecution has failed to prove harmlessness as it must, and that defendant is entitled to a new trial as a result. See *id.* at 502.

/s/ Philip P. Mariani